**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHGIAN**

| | |
|---|---|
| MICHELLE GILL, individually and on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>THRIFTY RETAIL SERVICES, LLC, d/b/a SERV-U-SUCCESS,<br><br>Defendant. | Case No. ________________<br><br>**CLASS ACTION COMPLAINT**<br><br>Jury Trial Demanded |

## CLASS ACTION COMPLAINT

Plaintiff Michelle Gill ("**Plaintiff**"), by the undersigned attorneys, on her own behalf and on behalf of all others similarly situated, upon personal knowledge with respect to herself, and upon information and belief as to all other matters, brings this class action against Defendant Thrifty Retail Services, LLC, d/b/a Serv-U-Success ("**Defendant**"), pursuant to the Fair Credit Reporting Act ("**FCRA**"), 15 U.S.C. § 1681 *et seq*., and alleges as follows:

## NATURE OF THE ACTION

1. Over 50 years ago, in enacting the FCRA, Congress recognized that with the "establishment of all sorts of computerized data banks, the individual is in great danger of having his life and character reduced to impersonal 'blips' and key-punch holes in a stolid and unthinking machine which can literally ruin his reputation without cause, and make him unemployable[.]" 116 Cong. Rec. 36570 (1970).

2. Congress was particularly concerned with the expanding practice[1] of "credit

[1] Today, approximately three billion consumer credit reports are issued annually in the United States. Moreover, every month, credit reporting agencies receive roughly 1.3 billion updates regarding 200+ million consumer files—an average of fifteen changes per file. National Consumer Law Center, *Fair Credit Reporting* § 1.2.2 (10th ed. 2022), *updated at* www.nclc.org/library.

reporting," noting in a Senate Report accompanying the landmark legislation that a consumer's future employment could be jeopardized by an incomplete (or otherwise erroneous) credit or consumer report. S. Report 91-517 at 4 (1970).

3. Notably, Congress amended the FCRA in 1996, upon recognizing "the significant amount of inaccurate information that was being reported by consumer reporting agencies and the difficulties that consumers faced getting such errors corrected." S. Rep. No. 108-166 at 5-6 (2003). Specifically, prospective employers were, *inter alia*, obtaining and using consumer reports in a manner that violated the privacy rights of job applicants. S. Rep. No. 104-185 at 35 (1995).

4. Consequently, when relying on consumer reports to make hiring and subsequent employment-related decisions, the FCRA now requires employers to: (i) disclose to consumers, in writing, that their consumer reports may be obtained for employment purposes; (ii) obtain authorization from consumers prior to procuring their reports; (iii) give notice to consumers before and upon taking adverse actions related to their reports; and (iv) provide consumers with copies of their reports and a reasonable time to address the information contained therein. *See* 15 U.S.C. § 1681b(b)(1)-(3).

5. Despite these and other prohibitions, Defendant violated the FCRA by, *inter alia*, failing to: (i) provide copies of consumer reports to Plaintiff and other consumers prior to taking adverse employment action against them based on such reports; and/or (ii) falsely certified that Defendant complied or would comply with the FCRA's mandates prior to obtaining copies of consumer reports referencing Plaintiff and other consumers.

6. Upon information and belief, Defendant's actions in violation of the FCRA are part

of a pattern of practice undertaken with numerous other individuals. As such, Plaintiff, on her own behalf and on behalf of all others similarly situated, files this Class Action Complaint seeking statutory damages, punitive damages, costs and attorneys' fees, and all other relief available pursuant to the FCRA.

## PARTIES

7. Plaintiff Michelle Gill is, and was at all relevant times, a resident of Fort Wayne, Indiana. Plaintiff was the subject of a consumer report[2] procured by Defendant.

8. Defendant Thrifty Retail Services, LLC, d/b/a Serv-U-Success is engaged in the business of providing retail supply chain, warehousing, distribution, and in-store merchandising services for grocery chains and product brands in Grandville, Michigan, and can be served through its registered agent, The Corporation Company, at 40600 Ann Arbor Rd E, Ste 201, Plymouth, MI 49418. Upon information and belief, Defendant employs approximately 2000 individuals.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because it is a civil action arising under the laws of the United States.

10. This Court has personal jurisdiction over Defendant because Defendant is headquartered in this District. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 317 (1945)).

[2] The FCRA defines "consumer report" as "any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for . . . (B) employment purposes[.]" 15 U.S.C. § 1681a(d)(1)(B).

11. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the acts or omissions giving rise to the claims alleged herein occurred within this District, and Defendant is subject to personal jurisdiction here.

## **LEGAL AUTHORITY**

12. The FCRA is "undeniably a remedial statute that must be read in a liberal manner in order to effectuate the congressional intent underlying it." *Cortez v. TransUnion*, 617 F.3d 688, 722 (3d Cir. 2010).

13. Section 1681b(b)(1) of the FCRA dictates when a consumer reporting agency[3] may provide a consumer report to an employer for employment purposes as follows:

> (A) the person who obtains such report from the agency *certifies* to the agency that—
>
> > (i) the person has complied with paragraph (2) with respect to the consumer report, and the person will comply with paragraph (3) with respect to the consumer report if paragraph (3) becomes applicable; and
> >
> > (ii) information from the consumer report will not be used in violation of any applicable Federal or State equal employment opportunity law or regulation; and
>
> (B) the consumer reporting agency provides with the report, or has previously provided, a summary of the consumer's rights under this subchapter, as prescribed by the Bureau under section 1681g(c)(3) [1] of this title.

15 U.S.C. § 1681b(b)(1) (emphasis added).

14. Absent said certification from an employer, the consumer reporting agency must

[3] The FCRA defines "consumer reporting agency" as "any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports." 15 U.S.C. § 1681a(f).

deny access to a consumer's personal information. *See id.* It is the "false certification of compliance" which creates liability. *See U.S. ex rel. Hopper v. Anton*, 91 F.3d 1261, 1266 (9th Cir. 1996) (Ninth Circuit holding that falsely certifying compliance in order to access private information causes injury)

15. Section 1681b(b)(2)(A) of the FCRA regulates the conduct of persons who procure a consumer report about employees or prospective employees as follows:

> Except as provided in subparagraph (B), a person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless—
>
> > (i) a clear and conspicuous *disclosure* has been made in writing to the consumer at any time before the report is procured or caused to be procured, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes; and
> >
> > (ii) the consumer has *authorized* in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report by that person.

15 U.S.C. § 1681b(b)(2)(A) (emphasis added).

16. The FCRA's disclosure requirement places consumers on notice that a consumer report may be obtained as part of the employment application process. In turn, the FCRA's authorization requirement provides consumers with an opportunity to consent to the lawful use of their personal information for limited purposes. *See id.*

17. Section 1681b(b)(3) regulates the conduct of persons intending to take an adverse employment action against any employee or prospective employee based on a consumer report as follows:

> Except as provided in subparagraph (B), in using a consumer report for employment purposes, *before* taking any adverse action[4] based in whole or

[4] 15 U.S.C. § 1681a(k)(1)(B)(ii) defines adverse action, in pertinent part, as "a denial of employment or any other decision for employment purposes that adversely affects any current or prospective employee."

> in part on the report, the person intending to take such adverse action shall provide to the consumer to whom the report relates—
>
> (i) a copy of the report; and
>
> (ii) a description in writing of the rights of the consumer under this subchapter, as prescribed by the Bureau under section 1681g(c)(3) 1 of this title.

15 U.S.C. § 1681b(b)(3)(A) (emphasis added).

18. As a practical matter, Section 1681b(b)(3) provides consumers with a reasonable amount of time to review their consumer reports and address any incomplete, inaccurate, or misleading information therein, as well as to discuss any alleged errors with prospective employers before any adverse employment action is taken. *See id*.

19. Section 1681q regulates the conduct of persons who obtain consumer reports as follows:

> Any person who knowingly and willfully obtains information on a consumer from a consumer reporting agency under false pretenses shall be fined under title 18, imprisoned for not more than 2 years, or both.

20. Section 1681q is designed to protect the confidentiality and integrity of a consumer's personal information by prohibiting the misuse of consumer reports by requiring that end users of such reports disclose their legitimate purpose for obtaining the information and refrain from misrepresenting their intentions when using the personal information.

21. A "false pretense" involves a calculated attempt to mislead another in order to obtain information. The determination of whether a consumer report was obtained under false pretenses is closely tied to the permissible purposes enumerated in 15 U.S.C. § 1681b.

22. A person aggrieved by a violation of Section 1681q may seek damages from the individual who violates that section. *See Northrop v. Hoffman of Simsbury, Inc*., 134 F.3d 41, 47

(2d Cir. 1997).

## FACTUAL ALLEGATIONS

23. On April 11, 2026, Plaintiff applied online for employment with Defendant for the Store Representative – Day Shift (Saturday and Sunday) position at Defendant's facility in Fort Wayne, Indiana.

24. On April 13, 2026, Plaintiff received an email from Natasha Kieffer ("Kieffer"), a Talent Development Coordinator with Defendant, to schedule a phone call via the E-Z Booking software.

25. On April 15, 2026, Plaintiff received an email from Kieffer confirming a telephonic interview for that same day.

26. On April 16, 2026, Plaintiff received a text message from a 616 area code number from Kieffer with Serv-U-Success to set up an on-site interview for April 22, 2026, with Amy Crumpacker, a Field Operations Manager with Defendant and Paul Taksey, a Store Manager with Defendant, at Defendant's Meijer store in Fort Wayne.

27. Plaintiff responded to the text confirming the interview date and time.

28. On April 22, 2026, Plaintiff attended the on-site interview.

29. During the interview, Plaintiff was verbally offered the position and told she would receive an email from Workforce, Defendant's staffing partner, with additional information.

30. On April 23, 2026, Plaintiff received a text message from Kieffer offering her the position.

31. Plaintiff was informed she would be employed by Workforce until the initial review period was complete then following the initial review period a position to work for Defendant would follow.

32. Plaintiff replied the same day to thank Kieffer and confirm she would be on the lookout for the email from Workforce.

33. That same day, Plaintiff received an email with an onboarding task list from Workforce on behalf of the Defendant.

34. The email notified Plaintiff that the email from Workforce was on Defendant's behalf and would help her to get ready for her new assignment with Defendant.

35. On April 24, 2026, Plaintiff received a text message from a 616 area code number in Grand Rapids Michigan and an individual named Lisa@WORKFORCE ("Lisa") offering help with the onboarding process.

36. Defendant requested that Plaintiff start the onboarding paperwork as soon as possible.

37. On April 27, 2026, Plaintiff sent a text message to Lisa informing her that she had completed most of the onboarding forms but was having difficulty completing two of them.

38. Plaintiff completed Defendant's onboarding paperwork, and Defendant ordered a consumer report on April 28, 2026 ("Consumer Report").

39. On April 28, Yardstik, a consumer reporting agency, sent Plaintiff an email stating that results have been added to her Workforce report.

40. Yardstik completed the Consumer Report on May 1, 2026.

41. Also on May 1, a Friday, Plaintiff received an email from Yardstik stating that her report is complete and ready to view.

42. On May 4, 2026, at 11:50 a.m., Plaintiff received a text message from Lisa Vonenivong, a representative of Workforce, stating that they received her background results and were sending them over to see if they could get the results approved.

43. On May 4, at 3:12 p.m., Plaintiff received a text message from Kieffer stating that Defendant decided to pass on approving the background report and to reach out to Workforce if she had any questions.

44. On information and belief, Workforce shared the results of Plaintiff's Consumer Report with Defendant.

45. On May 5, 2026, Plaintiff received an email from Defendant informing her that they would not be able to move forward with her application.

46. The May 5th email stated that Defendant would keep her updated if something else came available.

47. Plaintiff's Consumer Report indicated that her license was suspended, which was not accurate.

48. Plaintiff was denied the opportunity and ability to contest, correct, or explain the information in the Consumer Report before suffering the adverse action.

49. Plaintiff was confused as to whether the adverse action could be challenged.

50. Denying Plaintiff employment, in whole or in part, based on information in the Consumer Report is an adverse action which creates an injury in law.

51. Defendant's failure to provide Plaintiff with a copy of the summary of rights under the FCRA prior to taking adverse employment action deprived Plaintiff of a critical opportunity to understand her rights and review, contest, explain and/or dispute the information being used against her.

52. As a direct result of Defendant's failure to abide by the FCRA adverse action process, Plaintiff was left confused and unaware regarding: (i) the basis for the denial of employment; (ii) how to challenge the action; and (iii) whether she could challenge the action.

53. Plaintiff's lack of knowledge regarding her rights created garden variety emotional damages and anxiety.

54. Defendant's actions fundamentally undermined the fairness and transparency the FCRA was designed to protect and caused Plaintiff to suffer both tangible losses (including the loss of a good salary and benefits) and intangible injuries (such as loss of dignity, uncertainty about the future, and frustration over being denied a fair process).

55. Grand Rapids, Michigan municipal ordinance 9.959 requires employers to carefully consider, on a case-by-case basis, the nature and severity of the crime, the age of the individual at the time of the crime, whether there have been repeat offenses, whether the individual maintained a good employment history before or after the conviction, evidence of rehabilitation efforts, and whether the crime for which the individual was convicted may pose a demonstrable risk to the health, safety or welfare of other employees or persons or to property.

56. Plaintiff's FCRA adverse action rights are directly tied to her concrete interest of participating in an employment application process that is free from discrimination based on criminal history.

57. Fair chance hiring statutes and the EEOC guidelines — which operate as civil rights and equal employment opportunity protections — guarantee that an applicant with a criminal history shall have the right to: (a) discuss the nature, circumstances, and context of any criminal activity disclosed in a consumer report; (b) demonstrate rehabilitation, character references, and evidence of fitness for the position; (c) present evidence and argument that any criminal history is not relevant to the specific duties and responsibilities of the job sought; and (d) engage in an individualized assessment as required by law before being disqualified from employment on the basis of criminal history.

58. These fair chance hiring protections and EEOC guidelines function as civil rights guaranteeing equal access to employment by ensuring that individuals with criminal records are not discriminated against and excluded from the workforce without meaningful consideration of the relevance of prior criminal activity to the position at issue. Like Title VII of the Civil Rights Act of 1964 and analogous equal employment opportunity statutes, fair chance hiring laws recognize that blanket exclusions based on criminal history perpetuate systemic inequities and deny individuals the dignity of individualized consideration.

59. The FCRA's pre-adverse action notice requirement and fair chance hiring laws and the EEOC guidelines are complementary and mutually reinforcing statutory schemes.

60. The pre-adverse action notice is the procedural predicate that activates the consumer's substantive right to engage the employer in an individualized assessment. Without timely notice that an employer intends to take adverse action based upon a consumer report disclosing criminal history, the consumer is rendered unable to: (a) identify the specific criminal history information relied upon by the employer; (b) challenge inaccuracies, expungements, or sealed records that should not have appeared on the report; (c) present mitigating circumstances, evidence of rehabilitation, or proof that the criminal activity bears no rational relationship to the job; (d) invoke the individualized assessment protections guaranteed by fair chance hiring law; or (e) otherwise enforce any substantive right that is contingent upon knowledge that adverse action is contemplated.

61. By failing to provide Plaintiff with the pre-adverse action notice required under § 1681b(b)(3)(A), Defendant effectively nullified Plaintiff's fair chance hiring rights, rendering those protections illusory.

62. Plaintiff was denied the opportunity to discuss all criminal activity, both accurate

and inaccurate, appearing on the consumer report, to demonstrate its irrelevance to the position, and to compel the individualized assessment to which Plaintiff was entitled under law. Defendant's FCRA violation thus operated as both an independent statutory violation and as the proximate mechanism by which Plaintiff was deprived of civil rights protections designed to ensure equal access to employment.

63. Upon information and belief, before obtaining the Consumer Report, Yardstik required Defendant to certify pursuant to 15 U.S.C. § 1681b(b)(1) that: (i) the FCRA protections provided by 15 U.S.C. § 1681b(b)(2) and § 1681b(b)(3) would be followed by Defendant; and (ii) Plaintiff's Consumer Report would not be used in violation of any applicable federal or state equal employment law or regulation.

64. Defendant violated the FCRA by taking adverse action based on the Consumer Report without first providing Plaintiff with a copy of the report.

65. The illegal use of Plaintiff's personal information is akin to a breach of trust.

66. Defendant had a legal obligation akin to a trustee of the Consumer Report to act in the best interests of Plaintiff by allowing Plaintiff an opportunity to review the personal information prior to Defendant taking any adverse action.

67. Defendant breached its obligations and Plaintiff's trust by violating the law and the certification made to Yardstik which establish Defendant's expected standards of conduct.

68. Defendant would not have had access to Plaintiff's personal information without obtaining a copy of the Consumer Report.

69. The illegal use of Plaintiff's personal information is an injury in fact.

70. Upon information and belief, Defendant certified to Yardstik that it would not use Plaintiff's Consumer Report in violation of any applicable federal or state equal employment law

or regulation.

71. Upon information and belief, Defendant certified to Yardstik that it would abide by 15 U.S.C. § 1681b(b)(3), if that section of the FCRA became applicable.

72. Defendant certified to Yardstik that the FCRA adverse action requirements would be followed, but knowingly and willfully violated those requirements.

73. Defendant's certification was provided under false pretenses because Defendant has a practice of failing to follow the FCRA adverse action procedures.

74. Defendant knew that Plaintiff's FCRA adverse action rights would not be upheld, but also knew that failing to certify that the FCRA adverse action procedures would be followed would deny Defendant access to Plaintiff's Consumer Report.

75. Upon information and belief, Defendant also contractually agreed to abide by 15 U.S.C. § 1681b(b)(3) (*i.e.*, to provide a copy of the consumer report to the applicant prior to taking adverse action) and other notice provisions if allowed access to Plaintiff's personal information.

76. Defendant's certification was false because Defendant did not abide by the FCRA adverse action requirements.

77. Defendant violated the provisions of 15 U.S.C. § 1681b(b)(3) when Defendant failed to provide Plaintiff with a copy of the Consumer Report before taking adverse action.

78. Upon information and belief, Yardstik would not have provided Defendant access to Plaintiff's Consumer Report if Defendant had failed to certify that Defendant would abide by the FCRA's adverse action procedures.

79. Defendant's actions deprived Plaintiff of a meaningful opportunity to invoke the discretion of the decision maker before Defendant's denial of employment.

80. Defendant violated its statutory and contractual obligations by systematically

violating the provisions of the FCRA, despite having received the benefits of obtaining regulated personal information concerning Plaintiff.

81. Defendant's use of Plaintiff's Consumer Report in violation of the FCRA's adverse action procedures breached the implied covenant of good faith and fair dealing.

82. Defendant breached the parties' covenant of good faith and fair dealing when it used Plaintiff's limited authorization to procure the Consumer Report and thereafter failed to timely provide Plaintiff with a copy.

83. Defendant breached the parties' covenant of good faith and fair dealing when it procured Plaintiff's Consumer Report and subsequently denied Plaintiff an opportunity to review, dispute, explain, and/or otherwise address the personal information contained therein.

84. Plaintiff did not receive the protections to which Plaintiff was entitled, by law and contract, because of Defendant's actions.

85. Defendant is aware of its need to comply with the FCRA because, on information and belief, Defendant executed a certification with Yardstik that requires Defendant to abide by the requirements of the FCRA.

86. Defendant's violations of the FCRA, combined with its knowledge of the requirements of the FCRA, are evidence that Defendant's violations were reckless.

87. Upon information and belief, the manner in which Defendant took adverse action against Plaintiff is consistent with Defendant's policies and procedures.

## CLASS ACTION ALLEGATIONS

88. **Class Definitions**: Pursuant to Federal Rule of Civil Procedure 23, Plaintiff proposes the following class definitions:

> **ADVERSE ACTION CLASS:** All individuals against whom Defendant took an adverse action based on information in their consumer report for the period of the

previous two years prior to the date of filing, through the conclusion of this matter, and did not have an opportunity to contest the report prior to the adverse action.

**CERTIFICATION CLASS:** All individuals who were the subject of one or more consumer reports in which Defendant falsely represented that Defendant would comply with 15 U.S.C. § 1681b(b)(3) for the period of the previous two years prior to the date of filing, through the conclusion of this matter.

**FALSE PRETENSE CLASS:** All individuals who were the subject of a consumer report obtained by Defendant for employment purposes, where the Defendant obtained consumer reports by certifying to the consumer reporting agency, pursuant to 15 U.S.C. § 1681b(b)(1), that it would comply with the requirements of the FCRA, including the adverse action procedures set forth in 15 U.S.C. § 1681b(b)(3), when in fact the Defendant had no policy, procedure, practice, or intention of complying with such requirements, and thereby obtained information on said consumers under false pretenses in violation of 15 U.S.C. § 1681q for the period of the previous two years prior to the date of filing, through the conclusion of this matter.

89. As used herein, the term "Proposed Classes" shall refer to the aforementioned putative classes.

90. Plaintiff reserves the right to amend the class definitions before the Court determines whether certification is appropriate, if discovery or further investigation reveals that the Proposed Classes should be expanded or otherwise modified.

91. Excluded from the Proposed Classes are: (i) Defendant, its parents, subsidiaries, affiliates, officers, and directors; (ii) those who make a timely election to be excluded from the Proposed Classes, and (iii) any member of the judiciary presiding over this action.

92. **Numerosity**: The Proposed Classes are so numerous that joinder of all members of each class is impracticable. Defendant, which employs approximately 2000 individuals, regularly obtains and uses personal information in consumer reports to conduct background checks on prospective and current employees. Defendant also regularly obtains consumer reports via false certifications and relies on the personal information therein, in whole or in part, as a basis for

adverse employment action. Given the broad scope and nature of Defendant's business, Plaintiff believes that at least 250 individuals would fall within the definitions of the Proposed Classes during the relevant time period. Members of the Proposed Classes can be identified through Defendant's records.

93. **Common Questions of Law and Fact**: Virtually all issues of law and fact in this class action predominate over any questions affecting individual members of the Proposed Classes. The questions of law and fact common to the Proposed Classes include:

a. Whether Defendant takes adverse employment actions based on information in consumer reports;

b. Whether Defendant violated the FCRA by taking adverse actions against Plaintiff and other individual members of the Proposed Classes based on information in a consumer report without first providing them with a copy of the report;

c. Whether Defendant obtained consumer reports via a false 15 U.S.C. § 1681b(b)(1) certification;

d. Whether Defendant obtained consumer reports under false pretenses;

e. Whether Defendant's actions were reckless; and

f. The proper measure of damages.

94. **Typicality**: Plaintiff's claims are typical of the members of the Proposed Classes in that Plaintiff is entitled to relief under the same causes of action and upon the same facts. For example, the FCRA violations suffered by Plaintiff are typical of those suffered by other members of the Proposed Classes. Defendant typically fails to provide consumers with a copy of their consumer reports prior to taking adverse action against them based on information in the reports. Additionally, before obtaining the consumer reports, Defendant typically certified that the reports would be used for employment purposes and that Defendant would abide by 15 U.S.C. §

1681b(b)(2) and (3). Finally, Defendant treated Plaintiff consistent with other members of the Proposed Classes in accordance with Defendant's standard policies and practices.

95. **Adequacy of Representation**: Plaintiff is an adequate representative of the Proposed Classes because Plaintiff's interests coincide with, and are not antagonistic to, the interests of the members of the Proposed Classes. Plaintiff has retained attorneys competent and experienced in FCRA class action litigation. Plaintiff and Plaintiff's counsel will fairly and adequately protect the interests of all members of the Proposed Classes.

96. **Superiority:** A class action is superior to all other available methods for the fair and efficient adjudication of this controversy because joinder of all parties is impracticable. Moreover, questions of law and fact common to the members of the Proposed Classes overwhelmingly predominate over individual questions that may arise. Specifically, Defendant's conduct as described herein stems from common and uniform policies and practices which resulted in common violations of the FCRA.

97. Even if members of the Proposed Classes were able or willing to pursue individual cases, a class action would still be preferable given that a multiplicity of individual actions would likely increase the expense and time of litigation in light of the complex legal and factual controversies presented. Conversely, a class action provides the benefits of fewer management difficulties, single adjudication, economy of scale, and comprehensive supervision before a single trier of fact, and would result in reduced time, effort, and expense for all parties and the Court, and ultimately, the uniformity of decisions.

98. Plaintiff seeks statutory damages, punitive damages, costs and attorneys' fees, and all other relief available pursuant to the FCRA on behalf of all members of the Proposed Classes.

99. Plaintiff intends to send notice to all members of the Proposed Classes to the extent required by Fed. R. Civ. P. 23. The names and addresses of the members can be identified through Defendant's records.

**Count I**
**ADVERSE ACTION**
**(On Behalf of Plaintiff and the Adverse Action Class)**

100. Plaintiff incorporates the foregoing paragraphs 1-99 of this Class Action Complaint as if fully set forth herein.

101. Defendant obtained consumer reports concerning Plaintiff and the Adverse Action Class.

102. Defendant used the consumer reports to take adverse action against Plaintiff and the Adverse Action Class.

103. Defendant violated the FCRA by failing to provide Plaintiff and the Adverse Action Class with copies of their consumer reports before taking the adverse action.

104. Defendant violated the FCRA by failing to provide Plaintiff and the Adverse Action Class with reasonable time to review and address the information in their consumer reports.

105. Defendant violated the FCRA by failing to provide Plaintiff and the Adverse Action Class with reasonable time to dispute their consumer reports.

106. Had Defendant complied with the FCRA, Plaintiff and the Adverse Action Class would have been given time to review, explain, dispute and/or otherwise address the information contained in their consumer reports.

107. Plaintiff and the Adverse Action Class would have never permitted Defendant to obtain copies of their consumer reports had they known that Defendant's policy was to take adverse employment actions in violation of the FCRA.

108. Defendant's failure to comply with the mandates of the FCRA injured Plaintiff and the Adverse Action Class.

109. Defendant acted in deliberate or reckless disregard of Defendant's obligations under the law and the rights of Plaintiff and the Adverse Action Class.

110. Defendant's deliberate or reckless conduct is reflected by, among other things, the following facts:

a. Defendant has access to legal advice;

b. Defendant has ignored regulatory guidance from FTC Informal Staff Opinions and the unambiguous language of the FCRA;

c. 15 U.S.C. § 1681b(b)(1) required Defendant to certify that the protections of 15 U.S.C. § 1681b(b)(3) would be followed; and

d. Defendant entered a contract by which Defendant agreed to abide by the FCRA's adverse action requirements.

111. Plaintiff and the Adverse Action Class are entitled to statutory damages of not less than $100 and not more than $1000 for each of Defendant's violations pursuant to 15 U.S.C. § 1681n(a)(1)(A).

112. Plaintiff and the Adverse Action Class are also entitled to punitive damages for Defendant's violations pursuant to 15 U.S.C. § 1681n(a)(2).

113. Plaintiff and the Adverse Action Class are further entitled to recover their costs and attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3).

**Count II**
**CERTIFICATION VIOLATIONS**
**(On Behalf of Plaintiff and the Certification Class)**

114. Plaintiff incorporates the foregoing paragraphs 1-99 of this Class Action Complaint as if fully set forth herein.

115. Consumer reporting agencies are legally prohibited from providing employment-

related consumer reports without first obtaining the certifications required by 15 U.S.C. § 1681b(b)(1).

116. Prior to obtaining an applicant's consumer report for employment purposes, per 15 U.S.C. § 1681b(b)(1), Defendant was required to provide to the consumer reporting agency certification: (i) of the purpose for obtaining the report; and (ii) that Defendant would abide by FCRA protections.

117. According to the provisions of 15 U.S.C. § 1681b(b)(1), Defendant cannot obtain an applicant's consumer report until Defendant has certified that Defendant complied with the mandates of 15 U.S.C. § 1681b(b)(2).

118. According to the provisions of 15 U.S.C. § 1681b(b)(1), Defendant cannot obtain an applicant's consumer report until Defendant has certified Defendant will comply with the mandates of 15 U.S.C. § 1681b(b)(3), if that section becomes applicable.

119. According to the provisions of 15 U.S.C. § 1681b(b)(1), Defendant cannot obtain an applicant's consumer report until Defendant has certified that information from the consumer report will not be used in violation of any applicable federal or state equal employment opportunity law or regulation.

120. On information and belief, prior to obtaining consumer reports concerning Plaintiff and the Certification Class, Defendant certified that Defendant had complied with 15 U.S.C. § 1681b(b)(2) and would comply with 15 U.S.C. § 1681b(b)(3), if that section became applicable.

121. On information and belief, prior to obtaining consumer reports concerning Plaintiff and the Certification Class, Defendant also certified that personal information regarding Plaintiff and the Certification Class would not be used in violation of any applicable federal or state equal opportunity employment law or regulation.

122. Defendant knew that it would not comply with the mandates of 15 U.S.C. § 1681b(b)(1) prior to obtaining copies of consumer reports concerning Plaintiff and the Certification Class.

123. Defendant, therefore, made false certifications to obtain and use consumer reports concerning Plaintiff and the Certification Class for employment purposes.

124. The provisions of 15 U.S.C. § 1681b(b)(1) are intended to protect the privacy rights of Plaintiff and the Certification Class.

125. The provisions of 15 U.S.C. § 1681b(b)(1) are intended to protect the statutory right of Plaintiff and the Certification Class to review protected information.

126. Plaintiff and the Certification Class were injured by Defendant's practice of obtaining consumer reports via false certifications.

127. Absent Defendant's false certifications, Defendant would not have gained access to consumer reports concerning Plaintiff and the Certification Class, and Plaintiff and the Certification Class would not have suffered an adverse employment action.

128. Plaintiff and the Certification Class would have never permitted Defendant to obtain copies of their consumer reports had they known that Defendant: (i) would violate the provisions of the FCRA; (ii) was obtaining their reports in violation of the law; and (iii) had a pattern, policy, and practice of taking adverse actions in violation of the FCRA.

129. Moreover, Plaintiff and the Certification Class would have never permitted Defendant to obtain a copy of their consumer reports had they known that Defendant would deny them the opportunity to dispute their reports before taking any adverse action.

130. Defendant's failure to comply with the unambiguous mandates of the FCRA injured Plaintiff and the Certification Class.

131. Defendant acted in deliberate or reckless disregard of Defendant's obligations and the rights of Plaintiff and the Certification Class.

132. Defendant's reckless conduct is reflected by, among other things, the following:

a. Defendant has access to legal advice;

b. Defendant has ignored regulatory guidance from FTC Informal Staff Opinions and the unambiguous language of the FCRA; and

c. Defendant made certifications per 15 U.S.C. § 1681b(b)(1) that it purposely violated.

133. Plaintiff and the Certification Class are entitled to statutory damages of not less than $100 and not more than $1000 for each of Defendant's violations pursuant to 15 U.S.C. § 1681n(a)(1)(A).

134. Plaintiff and the Certification Class are also entitled to punitive damages for Defendant's violations pursuant to 15 U.S.C. § 1681n(a)(2).

135. Plaintiff and the Certification Class are further entitled to recover their costs and attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3).

**Count III**
**15 U.S.C. §1681q VIOLATIONS**
**(On Behalf of Plaintiff and the False Pretense Class)**

136. Plaintiff incorporates the foregoing paragraphs 1-99 of this Class Action Complaint as if fully set forth herein.

137. Consumer reporting agencies are legally prohibited from providing employment-related consumer reports without first obtaining the certifications required by 15 U.S.C. § 1681b(b)(1).

138. Prior to obtaining an applicant's consumer report for employment purposes, per 15 U.S.C. § 1681b(b)(1), Defendant was required to provide to the consumer reporting agency

certification that the FCRA adverse action requirements would be satisfied.

139. According to the provisions of 15 U.S.C. § 1681b(b)(1), Defendant cannot obtain an applicant's consumer report unless Defendant has certified Defendant will comply with the mandates of 15 U.S.C. § 1681b(b)(3), if that section becomes applicable.

140. On information and belief, prior to obtaining consumer reports concerning Plaintiff and the False Pretense Class, Defendant certified that Defendant would comply with 15 U.S.C. § 1681b(b)(3), if that section became applicable.

141. Defendant knew that it would not comply with the mandates of 15 U.S.C. § 1681b(b)(3) prior to obtaining copies of consumer reports concerning Plaintiff and the False Pretense Class.

142. Defendant certified to consumer reporting agencies that it would comply with the FCRA's adverse action procedures as a condition of obtaining reports, when in fact Defendant maintained no policy, procedure, or practice to do so—and had no intention of complying—thereby obtaining consumer information under false pretenses in violation of § 1681q.

143. Defendant, therefore, made certifications under false pretenses to obtain and use consumer reports concerning Plaintiff and the False Pretense Class for employment purposes.

144. Absent Defendant's false misrepresentations regarding the intent to uphold Plaintiff and the False Pretense Class's adverse action right, Defendant would have been denied access to the consumer reports.

145. The provisions of 15 U.S.C. § 1681q are intended to protect the privacy rights of Plaintiff and the False Pretense Class.

146. Plaintiff and the False Pretense Class were injured by Defendant's practice of obtaining consumer reports via false pretenses.

147. Defendant acted in deliberate or reckless disregard of Defendant's obligations and the rights of Plaintiff and the False Pretense Class.

148. Defendant's reckless conduct is reflected by, among other things, the following:

c. Defendant has access to legal advice;

d. Defendant has ignored regulatory guidance from FTC Informal Staff Opinions and the unambiguous language of the FCRA; and

c. Defendant made false certifications per 15 U.S.C. § 1681b(b)(1) that it knew to be false.

149. Plaintiff and the False Pretense Class are entitled to statutory damages of not less than $100 and not more than $1000 for each of Defendant's violations pursuant to 15 U.S.C. § 1681n(a)(1)(A).

150. Plaintiff and the False Pretense Class are also entitled to punitive damages for Defendant's violations pursuant to 15 U.S.C. § 1681n(a)(2).

151. Plaintiff and the False Pretense Class are further entitled to recover their costs and attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3).

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff, on behalf of herself and those similarly situated, respectfully requests that this Court enter judgment against Defendant as follows:

a. Certifying the Adverse Action Class, Certification Class, and the False Pretense Class under Rule 23(b)(1) and (3) of the Federal Rules of Civil Procedure;

b. Designating Plaintiff as class representative and designating Plaintiff's undersigned counsel as counsel for the Proposed Classes;

c. Finding that Defendant committed multiple, separate violations of the FCRA as to each Proposed Class Member;

d. Finding that Defendant acted in deliberate or reckless disregard of Defendant's obligations under the FCRA and the rights of Plaintiff and the

Proposed Classes;

e. Awarding statutory damages as provided by the FCRA;

f. Awarding punitive damages as provided by the FCRA;

g. Awarding reasonable attorneys' fees and costs as provided by the FCRA; and

h. Granting other and further relief, in law or equity, as this Court may deem just, equitable, and/or appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all Counts so triable.

Dated: October 9, 2026

Respectfully submitted,

By: /s/ Ivana Lozo
Ivana Lozo
**SIRI & GLIMSTAD LLP**
111 West Jackson Boulevard
Suite 1700 - #218
Chicago, IL 60604
Direct: 929-303-7675
Main: 888-SIRI-LAW
Email: ilozo@sirillp.com

*Attorney for Plaintiff*